BAO/KMB                                                                                    32-703-38-114

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CATLIN SYNDICATE 2003 AS LEAD UNDERWRITER FOR THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. SRSGLIL07069, ) ) ) ) ) | |
| Plaintiff, ) | No.: 11-cv-1902 |
| vs. ) ) | Judge Harry D. Leinenweber |
| ZURICH AMERICAN INSURANCE COMPANY, ADVANCE MECHANICAL SYSTEMS, INC. and IMPERIAL CRANE SERVICES, INC., ) ) ) ) | |
| Defendants. ) | |

**MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1)**

Defendant, ZURICH AMERICAN INSURANCE COMPANY ("Zurich"), by its attorneys, CREMER, SPINA, SHAUGHNESSY, JANSEN & SIEGERT, LLC, pursuant to Federal Rule of Civil Procedure Rule 12(b)(1), moves this court for entry of an order dismissing the Second Amended Complaint filed by CATLIN SYNDICATE 2003 AS LEAD UNDERWRITER FOR THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. SRSGLIL07069 ("Catlin"). In support of this motion, Zurich states as follows:

**Introduction**

This litigation was originally filed by Catlin on March 18, 2011 against ADVANCE MECHANICAL SYSTEMS, INC. ("AMS") and IMPERIAL CRANE SERVICES, INC. ("Imperial"). [DN 1]. In the originally filed action, Catlin sought declarations against AMS that Catlin owed no coverage (defense or indemnity) to AMS in connection with an underlying lawsuit titled *Imperial Crane Services, Inc. v. Advance Mechanical Systems, Inc., Turner*

1

*Construction Company, City of Chicago, and The Shops on Wabash, LLC*, Case No. 2008 L 3000, in the Circuit Court of Cook County, Illinois (hereinafter the "underlying case"). Imperial was named as a defendant as a necessary party. An order staying the proceedings was entered by this court on October 13, 2011. [DN 33].

Zurich filed a Petition to Intervene in this litigation on October 21, 2011. [DN 34]. That petition was granted [DN 40] and Zurich filed its Counterclaim in Intervention for Declaratory Judgment on October 27, 2011. [DN 38]. Zurich's Counterclaim sought declarations against Catlin for equitable reimbursement (Count I) and estoppel (Count III), against AMS with respect to future defense costs (Count II), and against Imperial seeking declarations that Zurich had no duty to defend or indemnify Imperial with respect to the underlying case (Count IV). Zurich's Counterclaim was also stayed.

On February 3, 2012, AMS and Imperial executed a release and settled the underlying case. Thereafter, on December 21, 2012, Zurich moved this Court for the voluntary dismissal of its Counterclaim, without prejudice[1]. [DN 47]. This Court granted Zurich's request on January 16, 2013, dismissing the Counterclaim without prejudice. [DN 49]. On February 7, 2013, Catlin filed a motion seeking to lift the stay in this litigation. [DN 50]. On March 21, 2013, Catlin was granted leave to file an amended complaint. [DN 53]. On July 22, 2013, Catlin filed an Amended Complaint, which added Zurich as a defendant. [DN 57]. Thereafter, on August 13, 2013, Catlin filed a Second Amended Complaint. [DN 59].

For the reasons stated below, this Court lacks subject matter jurisdiction as to the claims currently pled. As a result, the action must be dismissed. This motion is brought without prejudice to and without waiving Zurich's arguments that each count (I, II and III) of the Second

---

[1] Zurich has not waived any of its coverage positions with respect to Imperial and Catlin and expressly reserves the right to re-assert those coverage positions in this litigation should it become necessary.

2

Amended Complaint fails to state a valid claim, which are set forth in Zurich's separately and simultaneously filed motion to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).

### Argument

In order for jurisdiction to exist on the basis of diversity, there must be complete diversity of citizenship between the parties and an amount in excess of $75,000, exclusive of interest and costs, must be in controversy. See 28 U.S.C. §1332(a)(1). To survive a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of proving that the Court has subject matter jurisdiction to hear its claims. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). Here, it is clear that the present dispute does not satisfy the amount in controversy requirement and Catlin has not provided evidence of complete diversity.

A.   **Amount in Controversy**

The party asserting federal subject matter jurisdiction has the burden of affirmatively establishing that the jurisdictional minimum amount is satisfied. See *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540 (7th Cir. 2006). The amount in controversy is the amount required to satisfy the plaintiff's demands in full on the day the suit begins. See *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511-512 (7th Cir. 2006) (citing *Hart v. Schering - Plough Corp.*, 253 F.3d 272, 273 (7th Cir. 2001)); *Hart v. Schering-Plough Corp.*, 253 F.3d 272, 274 (7th Cir. 2001) (stating that "if the defendant can extinguish the plaintiff's entire claim by tendering $75,000 or less at the outset, then the amount 'in controversy' does not exceed $75,000"). The amount in controversy requirement must be met at the outset of the suit and subsequent events do not affect that jurisdiction. See e.g. *Cook v. Winfrey*, 141 F.3d 322, 326 (7th Cir. 1998); *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation*, 870 F.Supp.2d

587, 593 (SD Ill. 2012), *Tropp v. Western-Southern Life Ins. Co.*, 381 F.3d 591, 595 (7th Cir. 2004); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536 (7th Cir. 2006); *Johnson v. Wattenbarger*, 361 F.3d 991, 993-994 (7th Cir. 2004); *St. Paul Mercury Indemn. Co. v. Red Cab Co.*, 303 U.S. 283, 289-290 (1938).

Here, Catlin's coverage action against Zurich began with the filing of the Amended Complaint that brought Zurich into this litigation as a defendant. In the Amended Complaint, Catlin is not seeking any relief against AMS or Imperial. [DN 57, ¶¶ 3-4]. The Amended Complaint makes it clear that (1) Catlin is no longer pursuing its original claims against AMS and Imperial, (2) the filing of the Amended Complaint is a new action brought solely against Zurich with respect to amounts that Catlin claims it is entitled to through subrogation, and (3) the coverage action against Zurich has no relation whatsoever to the claims that Catlin previously asserted and settled with AMS. As a result, it is the Amended Complaint (which is the original complaint against Zurich) that must be evaluated for the purposes of determining whether Catlin has satisfied the amount in controversy requirement.

The Amended Complaint contains two counts: "Equitable and/or contractual subrogation" (Count I), and "Estoppel" (Count II). In support of these claims, Catlin alleges that after AMS filed its Counterclaim against Imperial in the underlying case, Imperial tendered its defense to Zurich. [DN 57, ¶¶22-23]. Catlin alleges that Zurich agreed to provide a defense to Imperial in the underlying case pursuant to a reservation of rights. [DN 57, ¶27]. Catlin alleges that "Zurich settled the [underlying case] by payment of a large sum to Imperial on behalf of [AMS]". [DN 57, ¶¶30, 45]. Catlin alleges that "Zurich is obligated to pay Imperial's defense fees from the date [AMS] filed its counterclaim against Imperial" in the underlying case. [DN 57, ¶39]. Catlin alleges that Zurich "assumed Imperial's defense under a reservation of rights,

but refused to pay Imperial's defense costs prior to the date Zurich accepted the tender, January 13, 2011." [DN 57, ¶44]. Catlin alleges that Zurich filed a declaratory judgment complaint alleging that Zurich had no duty to defend or indemnify Imperial in the underlying case. [DN 57, ¶46].

These allegations establish that Catlin is seeking to recover amounts paid on Imperial's behalf as defense costs from the date that AMS filed its Counterclaim in the underlying case (November 12, 2008) to the date Catlin alleges Zurich started paying defense costs (January 13, 2011).[2] Catlin fails to state the exact amount of fees and costs that it is seeking to recover for this time frame even though those amounts are necessarily capable of being ascertained. Nevertheless, the documents previously submitted to Zurich establish that Catlin's claim does not satisfy the amount in controversy requirement.

Zurich sent email correspondence on November 16, 2010 to Imperial's defense counsel (David Johnson of SmithAmundsen) informing him that Zurich was accepting Imperial's defense under a reservation of rights. See affidavit of claim representative attached hereto as **Exhibit 1**. Thereafter, invoices from Imperial's counsel, SmithAmundsen LLC, for the time period of December 1, 2010 through February 15, 2011 were submitted to and paid by Zurich. [See Ex.1]. Additionally, invoices from Imperial's separate counsel, Lyman & Nielsen, LLC, for the time period of January 3, 2011 through May 27, 2011 were submitted to and paid by Zurich. [See Ex.1]. Thus, Catlin's Amended Complaint (and subsequent Second Amended Complaint) inaccurately allege that Zurich refused to pay defense costs prior to January 13, 2011.

On January 13, 2011, Zurich issued its reservation of rights letter to Imperial's defense

---

[2] Zurich disputes that Catlin is entitled to subrogation for defense costs incurred during this timeframe and does not waive any arguments that it is entitled to assert in response to the subrogation claim. However, for the purposes of this motion, Zurich will use the time frame set out by Catlin. Even using this time frame, this matter fails to satisfy the amount in controversy requirement.

counsel, David Johnson of SmithAmundsen. [See Ex.1]. Thereafter, Cannon Cochran Management Services Inc. ("CCMSI") issued a letter to Karen Zortea (the claim representative at Zurich handling the Imperial claim) dated January 25, 2011. [See Ex.1]. CCMSI identified itself as the claim administrator for the commercial general liability policy issued to Imperial Crane. [See Ex.1, at Ex. C]. CCMSI's letter indicated Zurich had accepted Imperial's defense of the AMS Counterclaim under a reservation and provided copies of "defense related invoices" to Zurich for reimbursement. [See Ex.1, at Ex. C].

The first nine invoices listed in the CCMSI letter relate to legal work performed on Imperial's behalf in connection with the underlying incident prior to the filing of the AMS counterclaim. [See Ex.1]. Additionally, the CCMSI letter references and attaches invoices from Engineering Design & Testing Corp. (dated September 28, 2007) and McLarens Young International (dated November 7, 2007) that also predate the filing of the AMS Counterclaim. [See Ex.1]. The allegations in the Amended Complaint establish that Catlin is not seeking reimbursement of those invoices (nor could Catlin seek reimbursement of those invoices, since Zurich could not even arguably have any defense obligations to Imperial until Imperial was sued).

The remaining invoices listed in the CCMSI letter (which were issued by Imperial's counsel, SmithAmundsen LLC) are for the time period of February 4, 2009 through August 31, 2010. [See Ex.1]. Additionally, the CCMSI letter attaches an invoice from Action Owl Press (dated December 2, 2010) and Equivalent Data (dated March 19, 2009)[3]. [See Ex.1]. The CCMSI letter references and attaches a letter from Crane Institute of America (dated January 11,

---

[3] The CCMSI letter references and requests reimbursement for the Equivalent Data invoice in the amount of $290.00. An examination of the SmithAmundsen invoices shows that the Equivalent Data invoice was included in and paid with respect to SmithAmundsen invoice number 326019, dated July 10, 2009. As a result, the CCMSI letter incorrectly seeks double reimbursement for payment of the Equivalent Data invoice. For this reason, the Equivalent Data invoice is not included in the total reimbursement amount being sought from Zurich.

2011), which appears to be a response to an inquiry for expert services. While the CCMSI letter seeks reimbursement for $3,000 relating to this letter, no invoice or proof of payment for this amount was ever provided Zurich. [See Ex.1].

Neither Catlin, nor CCMSI, has ever submitted any additional invoices to Zurich for the time frame at issue in this case (November 12, 2008 to November 30, 2010[4]) that it claims Zurich was required to pay. [See Ex.1]. As a result, the invoices submitted with the CCMSI letter are the only invoices in dispute in this matter. Calculating the total amount billed and allegedly paid with respect to the thirteen SmithAmundsen invoices and the two additional vendor invoices referenced in the CCMSI letter demonstrates the total that Catlin is seeking in reimbursement in this matter is **$50,174.18** ($53,174.18 if the expert retainer letter is considered in the calculation).

Count I seeks reimbursement of these amounts calculated above and therefore necessarily fails to satisfy the amount in controversy requirement. Count II (estoppel) seeks to prevent Zurich from asserting coverage defenses against Imperial with respect to Zurich's position that it never owed any coverage (defense or indemnity) to Imperial in the underlying case. Count II does not seek monetary relief, and obviously cannot independently satisfy the amount in controversy requirement. The filing of the Second Amended Complaint, which contains identical allegations and the addition of asserting a claim for violation of Section 155 of the Illinois Insurance Code, does not help Catlin meet the amount in controversy requirement. It is well settled that events that occur after the filing of the suit (or after removal of a case to federal court) are not considered when determining whether the amount in controversy jurisdictional minimum has been met. See *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511-512 (7th Cir. 2006)

---

[4] This date is asserted as the relevant ending period as proofs attached to this motion establish that Zurich paid Imperial's defense costs starting December 1, 2010.

(citing *Hart v. Schering - Plough Corp.*, 253 F.3d 272, 273 (7th Cir. 2001)).

The amount in controversy pled when this matter commenced is well below the jurisdictional minimum required to proceed in federal court. As a result, this matter must be dismissed.

**B.     Complete Diversity**

The Amended Complaint alleges that this Court has jurisdiction over Catlin's coverage litigation against Zurich pursuant to 28 USC §1332 because "there is diversity of citizenship between plaintiff and the defendants". [DN 57, ¶5]. As the party seeking to invoke federal diversity jurisdiction, Catlin bears the burden of demonstrating that the complete diversity requirement is met. *See Chase v. Shop "N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997) (citing *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir.1995); *Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir.1976)). This burden will be met only by supporting allegations of jurisdiction with "competent proof" of complete diversity. See *Chase*, 110 F.3d at 427 (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). The Seventh Circuit has held that "competent proof" requires the offer of evidence which proves "to a reasonable probability that jurisdiction exists." *Chase*, 110 F.3d at 427 (*Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir.1993) (quoting *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir.1993)). When evidence pertinent to subject matter jurisdiction has been submitted, the court may look beyond the jurisdictional allegations of the complaint to determine whether subject matter jurisdiction exists. See *CCC Info. Servs., Inc. v. Am. Salvage Pool Ass'n*, 230 F.3d 342, 346 (7th Cir. 2000).

Here, Catlin alleges that it is an underwriting company operating within the Lloyd's of London insurance market. Catlin alleges the applicable Catlin policy was underwritten by five

8

underwriting entities - "Syndicate 2003 (Catlin), Syndicate 2791 (MAP), Syndicate 0033 (Hiscox), Syndicate 2020 (Wellington/Catlin), and Syndicate 0510 (Kiln)." [DN 57, ¶1]. Catlin claims that a true and correct copy of the Catlin policy is attached to the Amended Complaint as exhibit A. [DN 57, ¶7]. The Catlin Policy states that the policy is underwritten by "Certain Underwriters At Lloyd's, London". [DN 57-1, p.9].

The problems in establishing complete diversity in connection with policies underwritten by "Certain Underwriters At Lloyd's, London" is addressed in *Indiana Gas Co., Inc. v. Home Ins. Co.*, 141 F.3d 314 (7th Cir. 1998). In the *Indiana Gas* case, the Seventh Circuit stated that "underwriting syndicates are not corporations, and, because a court has a duty to ensure that subject-matter jurisdiction is present", the court has a duty to determine whether any of the subscribing names in any of the underwriting syndicates is a citizen of a state that destroys diversity (which, here, would be at least Illinois and New York). 141 F.3d at 316. The *Indiana Gas* court found that underwriting syndicates at Lloyds are described as having the "personal liability characteristics of a general partnership and the management structure of a limited partnership". 141 F.3d at 317. In this situation, as a general rule, "every association of a common-law jurisdiction other than a corporation is to be treated like a partnership." *Id.* In light of these factors, the Seventh Circuit concluded in the *Indiana Gas* case that underwriting syndicates must be treated like partnerships when determining their citizenships. 141 F.3d at 319. Moreover, "general partnerships, limited partnerships, joint stock companies, and unincorporated membership associations all are treated as citizens of every state of which any partner or member is a citizen." *Id.*

The Second Amended Complaint alleges (in paragraph 1) in relevant part as follows:

Policy No. SRSGLIL07069 ("The Catlin Policy") is an insurance policy issued
out of Lloyd's of London, a British insurance and reinsurance market. The Catlin

9

Policy was underwritten by five underwriting entities - Syndicate 2003 (Catlin), Syndicate 2791 (MAP), Syndicate 0033 (Hiscox), Syndicate 2020 (Wellington/Catlin), and Syndicate 0510 (Kiln) (Collectively, "the Syndicates"). The Syndicates are legal entities organized and existing under the laws of the United Kingdom, having their principal places of business in London, United Kingdom. Syndicate 2003 (Catlin) is wholly owned and financed by Catlin Group Limited, which is a Bermuda corporation with its principal place of business in Bermuda. Syndicate 2791 (MAP) is wholly owned and financed by Managing Agency Partners, Limited, which is a United Kingdom corporation with its principal place of business in London, United Kingdom. Syndicate 0033 (Hiscox) is wholly owned and financed by Hiscox Ltd, which is a Bermuda corporation with its principal place of business in Bermuda. Syndicate 2020 (Wellington/Catlin) is wholly owned and financed by Catlin Group Limited, which is a Bermuda corporation with its principal place of business in Bermuda. Syndicate 0510 (Kiln) is wholly owned and financed by Kiln Group Limited, which is a United Kingdom corporation with its principal place of business in London, United Kingdom.

Under *Indiana Gas*, these allegations are not sufficient to establish diversity. Alleging that a particular syndicate is "wholly owned and financed" by a Bahamian or United Kingdom entity does not meet the *Indiana Gas* standard. Regardless of whatever overseas entities "own and finance" the syndicates, it must be pled that no subscribing "name" or investor in the syndicate independently destroys diversity, since the syndicates are not analogous like U.S. corporations.

Moreover, certain publicly available information independently calls the assertion of diversity into question here. "The Catlin Group" is business entity that describes itself as "a specialist property/casualty insurer and reinsurer," according to its website (www.catlin.com). That website indicates "Catlin" maintains an office at 111 S. Wacker Drive in Chicago, under the designation "Catlin Underwriting Inc." Thus, there is publicly available information indicating that "The Catlin Group", which is alleged to be the owner and financier of Syndicate 2003 and Syndicate 2020 maintains an office in Chicago.

The Catlin policy does not identify who are the "certain underwriters" that issued the

policy. As a result, the Catlin policy does not provide competent proof that there is complete diversity in this case. Catlin has the burden to plead complete diversity between the parties in this case. Given the unique classification of Lloyd's "syndicates" set forth in *Indiana Gas,* Catlin has not done so. The Second Amended Complaint should therefore be dismissed for failure to adequately plead diversity of citizenship.

### Conclusion

The amount in controversy in this action is well below the jurisdictional requirement. Additionally, Catlin has failed to establish that there is complete diversity between the parties hereto. For either or both of these reasons, this action must be dismissed.

WHEREFORE, ZURICH AMERICAN INSURANCE COMPANY respectfully requests this Court dismiss the Second Amended Complaint filed by CATLIN SYNDICATE 2003 AS LEAD UNDERWRITER FOR THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. SRSGLIL07069, with prejudice to the re-filing of these claims in federal court.

ZURICH AMERICAN INSURANCE COMPANY

By: /s/ Kristina M. Beck
One of Its Attorneys

Brian A. O'Gallagher
Kristina M. Beck
CREMER, SPINA, SHAUGHNESSY, JANSEN & SIEGERT, LLC
One North Franklin Street, 10th Floor
Chicago, Illinois 60606
Tel: (312) 726-3800
Fax: (312) 726-3818
32-703/doc#305843