BAO/KMB                                                                  32-703-38-114

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CATLIN SYNDICATE 2003 AS LEAD UNDERWRITER FOR THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. SRSGLIL07069, ) ) ) ) ) | |
| Plaintiff, ) | No.: 11-cv-1902 |
| vs. ) ) | Judge Harry D. Leinenweber |
| ZURICH AMERICAN INSURANCE COMPANY, ) ADVANCE MECHANICAL SYSTEMS, INC. and ) IMPERIAL CRANE SERVICES, INC., ) ) | |
| Defendants. ) | |

## REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1)

Defendant, ZURICH AMERICAN INSURANCE COMPANY ("Zurich"), by its attorneys, CREMER, SPINA, SHAUGHNESSY, JANSEN & SIEGERT, LLC, replies in support of its motion to dismiss the Second Amended Complaint filed by CATLIN SYNDICATE 2003 AS LEAD UNDERWRITER FOR THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. SRSGLIL07069 ("Catlin") pursuant to Federal Rule of Civil Procedure Rule 12(b)(1), as follows:

### A.   Amount in Controversy

The authority cited by Zurich in its motion to dismiss establishes that the amount in controversy is the amount required to satisfy the plaintiff's demands in full on the day the suit begins. See *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511-512 (7th Cir. 2006); *Hart v. Schering-Plough Corp.*, 253 F.3d 272, 273 (7th Cir. 2001) (citing *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958-59 (7th Cir. 1998)); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 538 (7th Cir. 2006) (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 293

1

(1938)); *Cook v. Winfrey*, 141 F.3d 322, 326 (7th Cir. 1998). Each of the cited cases directly addressed the issue of whether the amount in controversy was met providing the federal court with subject matter jurisdiction over the case.

Catlin does not discuss the substance of these cases. Catlin briefly references *Oshana* to state that Catlin does not believe it supports Zurich's position. Catlin is wrong. *Oshana* controls here as it provides the correct standard for determining whether the jurisdictional minimum was met.

The amount in controversy is determined when the plaintiff files its claim. Here, for the controversy as between Catlin and Zurich, that happened with the filing of the Amended Complaint, which is the pleading in which Catlin first asserted that Zurich owed Catlin reimbursement for amounts that Catlin claims to have spent on behalf of Catlin's named insured (IMPERIAL CRANE SERVICES, INC.). The Amended Complaint asserted causes of action against Zurich for declaratory judgment and estoppel. The recovery on those causes of action was necessarily limited to the amounts for which Catlin is seeking reimbursement. Zurich's counsel had previously told Catlin's counsel that Zurich would be raising jurisdictional defenses to what Zurich regards as a frivolous claim by Catlin. See attached **Exhibit 2**. Being on notice that Zurich would assert all jurisdictional defenses that were appropriate, Catlin reassessed its originally pled claim and tried to bootstrap a Section 155 claim onto it in order to satisfy the amount in controversy requirement. But that is exactly what cases like *Oshana* prohibit.

Catlin cites *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609 (2002), for the proposition that the Court should consider the allegations in the Second Amended Complaint in determining whether Catlin has met the jurisdictional minimum in this case. *Morlan* does not address the relevant issue. In *Morlan*, the Seventh Circuit addressed the issue of whether an

individual (David Morlan) had standing to sue on behalf of a particular class. As the Court is well aware, special rules apply to jurisdiction over class action lawsuits, including the requirement that the courts have jurisdiction over the claim of the named plaintiffs when the suit is filed and continuously thereafter until certification. See *Morlan*, 298 F.3d at 616. Once the class is certified the loss of standing by the named plaintiffs will not destroy or curtail the court's jurisdiction over the claim. *Id.* David Morlan arguably had standing to sue on the entire claim at the outset of the filing of the class action lawsuit but lost standing as to a portion of the claim when he filed for bankruptcy (and part of the claim was automatically assigned to the bankruptcy trustee). The court found that the filing of an amended complaint, after the bankruptcy filing was dismissed but before the class was certified, saved David Morlan's action. This case does not involve a class action and *Morlan* does not address rules relating to the amount in controversy. As a result, *Morlan* is not controlling.

It is critical to note that Catlin's response does not dispute that the amounts for which Catlin seeks reimbursement are less than $75,000. Instead, Catlin's response (at the top of page 2) essentially admits that Catlin's claims asserted under Counts I and II do not meet the required jurisdictional amount. Catlin only contends that the Section 155 claim pled in Count III of the Second Amended Complaint combined with the other claims sufficiently meets the jurisdictional amount. The Section 155 claim was not pled originally, and cannot be considered in determining whether Catlin's claims met the jurisdictional requirements. Catlin's position that the Section 155 claim can be considered is unsupported by any court opinion and is directly contrary to established Seventh Circuit precedent. Moreover, as discussed further in Zurich's separate motion to dismiss for failure to state a claim, Catlin cannot, as matter of law, recover damages on its Section 155 claim. For that separate reason, the Section 155 claim cannot satisfy the amount

3

in controversy requirement here.

For these reasons and those set forth in the motion to dismiss, the amount in controversy requirement was not satisfied here. As a result, on basis alone, this case must be dismissed with prejudice.

**B.      Complete Diversity**

Catlin's response (at p. 5) admits that the burden of establishing complete diversity rests with the plaintiff that is seeking federal jurisdiction. Catlin's counsel claims to have conducted in-depth research into the structure of the syndicates of the Catlin policy. Given that claim, providing competent proof of citizenship for the various members of the syndicates should not be difficult. Catlin, however, strangely refuses to provide the required "competent proof" regarding the citizenship of the underwriting syndicates.

Catlin cannot ignore its burden of establishing jurisdiction here. Catlin cites *NL Industries, Inc. v. OneBeacon American Ins. Co.*, 435 F.Supp.2d 558 (N.D. Tex. 2006), in its response, ostensibly in support of Catlin's position. But *NL* expressly holds that the party who seeks to invoke federal court jurisdiction bears the burden of establishing that such jurisdiction exists. See *NL Industries,* 435 F.Supp.2d at 562 ("[a]s OneBeacon seeks to invoke federal court jurisdiction, it should be fully prepared to meet that burden by making the affirmative and distinctive allegations required regarding diversity, or provide the necessary proof that establishes diversity. As the removing party has the burden to establish jurisdiction, it should not rely on its opponent to carry the day").

The *NL* court found that diversity of citizenship could not be established in a coverage dispute where a policy issued by "Certain Underwriters of Lloyds London" was at issue. In considering the diversity issue, the *NL* court provided a lengthy analysis of the structure and

4

makeup of Lloyd's of London that is very similar to the analysis contained in *Indiana Gas Co., Inc. v. Home Ins. Co.*, 141 F.3d 314 (7th Cir. 1998). Catlin's response (at p. 4) states to the Court "according to the research done by [Catlin's] counsel \*\*\*, all of the cases discussing the jurisdictional significance of Lloyd's 'names' in the context of diversity jurisdiction are from the 1990s or earlier \*\*\* [because] the huge extent of asbestosis losses that came to light in the early 1990s wiped out most of the individual 'names' that had historically financed the Lloyd's syndicates." In support of this proposition, Catlin cites a Wikipedia entry. But in 2006, while analyzing whether there was diversity jurisdiction in a case where Certain Underwriters at Lloyd's was a party, the *NL* court stated as follows:

> The members or investors who collectively make up Lloyd's are called "Names" and they are the individuals and corporations who finance the insurance market and ultimately insure risks. Names are underwriters of Lloyd's insurance and they invest in a percentage of the policy risk in the hope of making return on their investment. Lloyd's requires Names to pay a membership fee, keep certain deposits at Lloyd's, and possess a certain degree of financial wealth. Each Name is exposed to unlimited personal liability for his proportionate share of the loss on a particular policy that the Name has subscribed to as an underwriter. Typically hundreds of Names will subscribe to a single policy, and the liability among the Names is several, not joint. \*\*\*
>
> In this case, NL sued Certain Underwriters at Lloyd's of London. As such, the suit is against each Name or Underwriter who is a subscriber to the policies in question. *NL Industries*, 435 F.Supp.2d at 564-565.

So the *NL* case disproves Catlin's assertions that the "names" that serve as individual investors in the different underwriting syndicates are no longer significant in assessing the existence of diversity in cases involving policies issued through the Lloyd's marketplace. As do *Certain Underwriters at Lloyd's, London v. Washington*, 2009 WL 5215927 (E.D. La.) and *National Union Fire Insurance Co. of Pittsburg, PA v. Siemens Energy, Inc.*, 2013 WL 3323182

5

(S.D. TX. July 1, 2013). *Washington* and *Siemens* are additional cases where a federal judge remanded a case involving Certain Underwriters at Lloyd's to state court because diversity was destroyed by the domiciles of certain names that participated in the particular Syndicate that was the lead underwriter for policy at issue in that case.

In *Washington*, Syndicate 2020 was the lead underwriter and the court noted that Syndicate 2020 included names/investors that were domiciled in New Jersey and Delaware, states that destroyed diversity in the *Washington* case (based on where the defendants in that case were domiciled). It should be noted that Catlin alleges that the Syndicate 2020 is one of the underwriting syndicates that underwrote the relevant Catlin policy here. The policy at issue in *Washington* was in effect in August 2005 (when Hurricane Katrina hit). The policy at issue here incepted in April 2007. Yet Catlin asks the Court to accept its vague assertion that Syndicate 2020 is "wholly owned and financed by Catlin Group Limited" as conclusively establishing the required diversity exists here, despite the fact that (possibly) the same Syndicate was determined (in a case decided in 2009) to include names that were domiciled in the United States.

In *Siemens*, diversity jurisdiction was challenged by one of the subscribing underwriters to the Lloyd's policy at issue in that case in order to secure a remand to state court. In support of the jurisdictional challenge, the Lloyd's underwriter argued that the existence of diversity had to be assessed based on all the names included in each Syndicate that participated in the risk insured by the Lloyd's policy at issue. One such Syndicate was identified as "Hiscox Syndicate 33", which is one of the five Syndicates that Catlin has identified as participating in the policy at issue in this matter. Catlin alleged in its Second Amended Complaint that Syndicate 33 was "wholly owned and financed by Hiscox Ltd." Yet, in *Siemens*, the Lloyd's underwriter successfully challenged diversity by introducing proof that one of the individual

"names"/members of Syndicate 33 was a resident of Florida, which destroyed diversity in that case. In fact, in *Siemens*, the Lloyd's underwriter actually submitted an affidavit establishing that "Hiscox Syndicate 33 consisted of 1919 members". 2013 WL 3323182 (S.D. TX. July 1, 2013) at *4, footnote 4.

*Washington* and *Siemens* conclusively refute Catlin's argument that the names in individual Syndicates are no longer significant for assessing the existence of diversity jurisdiction. More troubling is the fact that *Washington* and *Siemens* show that when a Lloyd's underwriting entity wants to challenge the existence of diversity jurisdiction, Lloyd's routinely raises the issue of where the names are domiciled as means to destroy diversity jurisdiction. And most troubling of all is the fact that *Washington* and *Siemens* may contradict the representations Catlin has now made about the jurisdictional status of two of the Syndicates that are at issue in this case – Syndicates 2020 and 33. Catlin has represented to this Court that those Syndicates do not have members or names that were domiciled in the United States. *Washington* and *Siemens* found that Lloyd's Syndicates identified by those same numbers did in fact have United States members.

Again, Catlin's position appears to be that Zurich and the Court are required to simply take Catlin's word for it that proper diversity jurisdiction exists here. The *Indiana Gas* case shows that is not the proper approach and the *Washington* and *Siemens* cases directly cast doubt on the accuracy of Catlin's representations regarding jurisdiction. Catlin's citation to the *Society of Lloyd's v. Estate of McMurray* case also does not support Catlin's position. In *McMurray*, the court specifically noted that *Indiana Gas Company* did not control the jurisdiction issue because the plaintiff in *McMurray* was not a collection of underwriting syndicates, but was rather a corporation that was not an insurance company. See 274 F.3d 1133, 1143, fn. 1. Here, the

relevant policy was underwritten by "Certain Underwriters of Lloyds London", like in the *Indiana Gas Company* case, so the assessment of jurisdiction does require the analysis of a collection of underwriting syndicates.

It is Catlin's responsibility to provide competent evidence that proper jurisdiction exists here. Catlin pled that two of the underwriting syndicates were "owned and financed" by Catlin Group Limited. Zurich's motion noted that "the Catlin Group"/ "Catlin" maintains an office at 111 S. Wacker Drive in Chicago, under the designation "Catlin Underwriting Inc." [DN 65, p. 10]. Catlin completely ignored that information in its response. The Illinois Secretary of State's records reflect that Catlin Underwriting Inc. is incorporated under Delaware law, but has a President that maintains an office in New York. See **Exhibit 3**. Domicile in New York or Illinois would destroy diversity in this matter.

As noted above, in its response, Catlin cited Wikipedia as support for its contentions regarding the current structure of the Lloyd's underwriting syndicates. The internet also contains potentially relevant information regarding the Hiscox entity that Catlin alleges to be one of the organizations that has underwritten the risk for the Catlin policy. Specifically, Catlin alleged in its Second Amended Complaint that Syndicate 0033 (one of the five underwriting syndicates that underwrote the Catlin policy) was "wholly owned and financed by Hiscox Ltd." The Hiscox family of companies maintains a website with the "HiscoxUsa.com" address. That Website states as follows regarding Hiscox's United States operations:

> Hiscox is a leading specialist insurer with roots dating back to 1901. We are not a traditional insurer. We target specific types of insurance in which we develop expertise, often focusing on areas other insurers find too complex to insure.
>
> \*\*\*
>
> Our companies in the US include Hiscox Inc. and Hiscox

8

> Insurance Company Inc. (NAIC Number 10200). Hiscox Insurance Company Inc. is a Chicago, IL domiciled insurer admitted or licensed to do business in all 50 states and the District of Columbia. Hiscox Insurance Company Inc. is rated A (Excellent) by A.M. Best with a group financial size category (FSC) of XI, proving we have strong capital reserves.
>
> Hiscox Inc., a DE corporation, that does business in California as Hiscox Insurance Agency, is an approved Lloyd's coverholder and underwrites surplus lines business on behalf of Lloyd's Syndicates 33 and 3624. Syndicate 33 is rated A (Excellent) by A.M. Best and Syndicate 3624 benefits from the overall group rating of Lloyd's which is A (Excellent). Lloyd's syndicates are restricted in doing business in the USA and its territories as they are not US-based insurers. The business we write on behalf of Lloyd's Syndicates 33 and 3624 in the US is placed through US insurance brokers.
>
> \*\*\*
>
> **Hiscox in the US**
>
> We have sold insurance to US businesses through our Lloyd's of London Syndicates for over 40 years. Since 2006, we have established offices across the country and are licensed to operate in all US states and the District of Columbia.
>
> We offer a diverse portfolio of insurance products through US based brokers and also directly to small business owners.
> See **Exhibit 4.**

So Hiscox Inc., a U.S. carrier apparently "underwrites \*\*\* business on behalf of Lloyd's Syndicate 33", one of the Syndicates that allegedly underwrote the relevant policy here. The HiscoxUSA website also states as follows under the heading "U.S. Locations:"

> Hiscox's corporate headquarters are in New York with offices across the US. We feel it is important to have a presence in each of our key markets allowing us to build local relationships. We operate in all US states and the District of Columbia, and offer a range of specialty insurance products through US based brokers.
> See Ex. 4.

Thus, there is publicly available information that suggests Catlin and Hiscox, two of the underwriting entities that allegedly underwrote the relevant policy, maintain a significant United

9

States presence that includes "headquarters" and offices in Illinois and New York, two states that destroy diversity here[1]. Catlin cannot ignore this information. It constitutes an admission against interest tending to indicate that the required diversity does not exist here.

Catlin concludes its response by arguing that Zurich should not be allowed to seek discovery on the issue of subject matter jurisdiction. [DN 75, pp. 6-7]. That is revealing. Not only has Catlin failed to adequately plead diversity, it wants the Court to shut down any inquiry into the proper existence of diversity during the discovery process. In Zurich's view of course, this case should be dismissed for failure to properly allege diversity jurisdiction without the need for discovery. But Catlin's request that the Court not allow any discovery into Catlin's diversity contentions should provide a signal to the Court as to the suspect nature of Catlin's contentions. If this case continues in this forum (and Zurich respectfully suggests it should not), discovery should be allowed on the jurisdictional question. Prohibiting such an inquiry would be completely illogical in view of how the *Indiana Gas* case was decided.

Moreover, nothing in *NL Industries, Inc. v. OneBeacon American Ins. Co.*, 435 F.Supp.2d 558, 562 (N.D. Tex. 2006) supports Catlin's "no jurisdictional discovery allowed" position. The court in *NL Industries* refused to allow discovery on subject matter jurisdictional post-removal as the court believed OneBeacon (the party that invoking federal jurisdiction by seeking removal) should have been prepared to meet its burden when it sought removal the case. Likewise here, Catlin should be prepared to accept its burden and expect discovery to be conducted, if necessary, on the jurisdictional issue.

---

[1] The records maintained by the Illinois Secretary of State and the New York Department of State Corporations Division provide additional support for the publicly available information. See Ex. 3; see also **Exhibit 5** and **Exhibit 6**. To the extent that this Court requires certified copies of these documents, Zurich requests leave to provide the court with the same.

Furthermore, the "no jurisdictional discovery allowed" is inconsistent with normal practice in this District. See e.g. *Perry v. Pogemiller,* 146 F.R.D. 164 (N.D. Ill. 1993) (holding that defendant's discovery requests sought relevant information and that plaintiff's refusal to answer discovery regarding its claim of diversity jurisdiction warranted dismissal with prejudice); *Wat Buddha-Dhamma, N.F.P. v. Stang,* 2010 WL 3210586 (N.D. Ill. 2010) (Not Reported) (where court allowed the parties to engage in discovery regarding the issue of diversity); *Parkside Med. Servs. Corp. v. Lincoln West Hosp.,* Inc., 1989 WL 75430, *1-2 (N.D. Ill. June 20, 1989) (allowing jurisdictional discovery until the issue of complete diversity was resolved).

Catlin's response repeatedly suggests Zurich's motion accuses Catlin of lying. Actually, Zurich is questioning diversity when it should (at the outset of the case) in order to ensure that the issue is not raised at a later date by this Court or a reviewing court pursuant to the court's own independent duty to raise subject matter jurisdiction *sua sponte*[2]). That Catlin would interpret Zurich's challenge as an accusation of improper conduct is itself revealing. If anything, Catlin should err on the side of being overly forthcoming on the jurisdiction issue, since getting the issue right at this time is in everybody's best interest.

Catlin has failed to establish that there is complete diversity between the parties hereto. For this reason, this action must be dismissed.

ZURICH AMERICAN INSURANCE COMPANY

By: /s/ Kristina M. Beck
One of Its Attorneys

---

[2] See *NL Industries, Inc. v. OneBeacon American Ins. Co.,* 435 F.Supp.2d 558, 561 (N.D. Tex. 2006) (citing *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574 (1999) and *McDonal v. Abbott Labs.,* 408 F.3d 177, 182 n. 5 (5th Cir. 2005)).

Brian A. O'Gallagher
Kristina M. Beck
CREMER, SPINA, SHAUGHNESSY, JANSEN & SIEGERT, LLC
One North Franklin Street, 10th Floor
Chicago, Illinois 60606
Tel: (312) 726-3800
Fax: (312) 726-3818
32-703/doc#308361