BAO/KMB                                                                                              32-703-38-114

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CATLIN SYNDICATE 2003 AS LEAD UNDERWRITER FOR THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. SRSGLIL07069, <br><br> Plaintiff, <br><br> vs. <br><br> ZURICH AMERICAN INSURANCE COMPANY, ADVANCE MECHANICAL SYSTEMS, INC. and IMPERIAL CRANE SERVICES, INC., <br><br> Defendants. | No.: 11-cv-1902 <br><br> Judge Harry D. Leinenweber |

### REPLY IN SUPPORT OF ALTERNATIVE MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)

Defendant, ZURICH AMERICAN INSURANCE COMPANY ("Zurich"), by its attorneys, CREMER, SPINA, SHAUGHNESSY, JANSEN & SIEGERT, LLC, replies in support of its motion to dismiss the Second Amended Complaint filed by CATLIN SYNDICATE 2003 AS LEAD UNDERWRITER FOR THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. SRSGLIL07069 ("Catlin") pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), as follows:

**I.     Dismissal of Count I Based On Failure To State A Claim For Equitable and/or Contractual Subrogation is Required**

As the only basis for its supposed equitable subrogation claim, Catlin has suggested that Imperial made a targeted tender of its defense of the underlying counterclaim to Zurich. Catlin has attached letters to its pleading that supposedly show the targeted tender. Those letters show no targeted tender was made.

Catlin first cites a letter dated May 22, 2007 that was issued to "Advanced Mechanical

1

System", not to Zurich. The letter was issued by NBIS Construction and Transportation Underwriting, Inc. ("NBIS"), not Imperial. Under Illinois law, only the insured itself can make a targeted tender. See *Chicago Hosp. Risk Pooling Program v. Illinois State Medical Inter-Ins. Exchange,* 325 Ill.App.3d 970, 976, 758 N.E.2d 353, 357 (1st Dist. 2001) (the "insured has the exclusive right… to make a "selective tender" of its claim to one of several potential insurers"); *Bituminous Cas. Corp. v. Royal Ins. Co. of America,* 301 Ill.App.3d 720, 726, 704 N.E.2d 74, 79 (3d Dist. 1998) ("Coverage cannot be triggered by a tender from a rival insurer."). For these reasons alone (the letter was not issued to Zurich, the letter was not issued by Imperial), the May 22, 2007 letter does not constitute a targeted tender of the (at the time) unfiled Counterclaim.

But even more problematic for Catlin is the fact that the May 22, 2007 letter was issued about 17 months before the relevant counterclaim had been filed. [DN 57-9]. So the May 22, 2007 letter could not constitute a tender of Imperial's defense. There was no suit to defend, meaning a duty to defend literally did not exist. As the Illinois Supreme Court instructed in *Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.*, "the duty to defend extends only to suits and not allegations, accusations or claims which have not been embodied within the context of a complaint." 166 Ill.2d 520, 532, 655 N.E.2d 842, 848 (1995). So the May 22, 2007 letter is a nullity in the target tender analysis.

The only potentially relevant letter here was dated November 3, 2009, issued by a defense attorney (David Johnson) to Zurich and AMS. [DN 57-11]. That letter does not state Imperial is looking solely to Zurich for a defense of the underlying counterclaim. Nor does that letter indicate Imperial has directed Catlin not to provide a defense of the underlying counterclaim. Catlin cites *Alcan United, Inc. v. West Bend, Mutual Ins. Co.* for the proposition that "all that is required for a *John Burns* tender to become effective is for the insured to inform

2

its own insurer not to become involved". Zurich does not agree that *Alcan*, which was decided several years before *John Burns Construction Co. v. Indiana Insurance Co.,* 189 Ill.2d 570 (2000), expressly sets forth the criteria for a *John Burns* tender. But even accepting Catlin's argument at face value, it is clear that the November 3, 2009 letter does not "inform [Catlin] not to become involved", as Catlin acknowledges is necessary to effect a valid selective tender under Illinois law. Nor does the November 3, 2009 letter state that Imperial "looked solely" to Zurich for coverage, as did the letter determined to be a targeted tender by the *John Burns* court. 189 Ill.2d at 574.

The more general allegations in Catlin's pleading also refute the suggestion that Imperial made a targeted tender to Zurich, because Catlin obviously paid a portion of the bills that were incurred in defending the underlying counterclaim, which Catlin would not have done if Imperial had informed Catlin not to become involved. While insureds may deactivate coverage with their insurance carrier that was previously selected for purposes of invoking exclusive coverage with another carrier, there is simply no allegation in the Second Amended Complaint that Imperial ever did so. See *Dearborn Ins. Co. v. Int'l Surplus Lines Ins. Co.*, 308 Ill. App. 3d 368, 375, 719 N.E.2d 1092, 1097 (1999) (holding that coverage was not deactivated where there was no evidence that the insured instructed its insurance carrier not to defend). So the supposed targeted tender cannot be used a basis to support any subrogation claim.

In support of its supposed right to contractual subrogation the Second Amended Complaint (at paragraph 34) cites the "Transfer of Rights of Recovery Against Others to Us" provision in the Catlin policy. That provision only allows Catlin to pursue amounts that Imperial would have a right to recover. No such right exists here as there is nothing for Imperial to recover. Catlin admits that it paid the defense costs (pursuant to the obligations under its own

3

insurance policy). There are no allegations that Imperial paid any defense costs that were not reimbursed by one of the insurance carriers. Catlin does not contest the position that there is no contract between Catlin and Zurich. As a result, no contractual subrogation claim could be pled here.

Accordingly, Catlin has failed to sufficiently plead a claim for equitable subrogation and contractual subrogation and Count I must be dismissed as a result.

## II.     Dismissal of Count II Based On Failure To State A Claim For Estoppel is Required

Catlin, in its response, confirms that the type of estoppel that it is seeking to impose on Zurich in Count II of its Second Amended Complaint is the type set forth in the Illinois Supreme Court's opinion in *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill.2d 127, 708 N.E.2d 1122 (1999). Catlin claims that *Ehlco* applies here and therefore the court must accept the facts as true and find that Catlin has stated a claim for estoppel. [DN 74, pp. 3-4].

In *Ehlco*, the insurance carrier, Wausau, was estopped from raising policies defenses because of Wausau's failure to provide a defense or file a timely declaratory action and, instead, denied coverage and left the insured to protect itself. Here, Catlin's allegations (taken as true for the purposes of this motion only) show that Zurich complied with the requirements of Illinois law as set forth in *Ehlco* by providing a defense under a reservation of rights and later filed a declaratory judgment action. Catlin does not dispute that a defense was provided to Imperial or that Zurich filed a declaratory judgment action. Catlin has provided no support for the claim that the *Ehlco* doctrine should be modified to impose estoppel on an insurance carrier that initially pays defense cost on behalf of an insured and subsequently filed a declaratory judgment action challenging the defense obligation.

In *Santa's Best*, the court found that Zurich, unlike the defendant carrier in *Ehlco* (where

4

the insured was abandoned and nothing was paid on behalf of the insured), "satisfied its duty to defend the plaintiffs despite its belief that the insurance policy did not provide coverage for the claim asserted." 408 Ill.App.3d 173, 182, 941 N.E.2d 291, 300. Here, Zurich provided a defense and did not abandon Imperial. As a result, *Santa's Best* supports Zurich's motion.

For these reasons and those stated in the motion, Count II of the Second Amended Complaint must be dismissed, with prejudice.

**III.    Dismissal of Count III Based On Failure To State A Claim Under Section 155 is required**

    **a. Catlin cannot recover under Section 155.**

Catlin's response creates a question as to whether Catlin understands Zurich's position regarding Catlin's ability to seek Section 155 damages. Zurich maintains that Catlin could only seek such damages if Catlin took a valid <u>assignment</u> of whatever right <u>Imperial</u> has to prosecute a Section 155 claim against Zurich (because Catlin has no independent right to bring a Section 155 claim) and that Catlin has not adequately pled that Catlin took a valid assignment of the Section 155 claim from Imperial.

Catlin suggests (at p. 5 of its response) that Catlin can independently assert a Section 155 claim against Zurich, even in the absence of an assignment from Imperial. [DN 74, p. 5]. *Statewide* does not state or stand for the cited proposition. While the *Statewide* court noted the existence of the transfer of rights provision in the insurance policy, the court specifically found that the "terms of the settlement funding agreement established that Statewide was JCC's assignee." 397 Ill.App.3d 410, 427. No such agreement has been presented here. More generally, *Statewide* is immaterial for purposes of this Court's analysis. The Illinois Supreme Court, has spoken on this issue in *Yassin v. Certified Grocers of Illinois, Inc.*, 133 Ill.2d 458, 466, 551 N.E.2d 1319, 1322 (1990), which expressly held "the remedy embodied in Section 155

5

of the Insurance Code does not extend to third parties". If *Statewide* could be construed as being inconsistent with *Yassin*, this Court follows the statements of Illinois' highest court. So, without a valid assignment, Catlin cannot seek any relief under Section 155.

The issue of whether there has been a valid assignment presents a question of law, since all the elements of a valid contract (including the payment of sufficient consideration) must exist. See *Mimica v. Area Interstate Trucking, Inc.*, 250 Ill. App. 3d 423, 431, 620 N.E.2d 1328, 1335 (1st Dist. 1993) (stating "Whether consideration is legally adequate to support a contract is a question of law for the court to decide, not a question of fact for the jury. *Abrams v. Awotin* (1944), 388 Ill. 42, 57 N.E. 2d 464; *Russell v. Jim Russell Supply, Inc.* (1990), 200 Ill.App.3d 855, 146 Ill.Dec. 152, 558 N.E.2d 115"); *Agnew v. Brown*, 96 Ill. App. 3d 904, 908, 422 N.E.2d 111, 114-115 (1st Dist. 1981) (holding that a contract will be held invalid by the courts where there is a lack or failure of consideration). Here, Catlin never challenged the existence of coverage for the underlying counterclaim. So all Catlin did, according to its pleading, was pay amounts (defense costs) that were already due under the terms of its policy issued to Imperial. The discharge of Catlin's pre-existing contractual duty is not valid consideration for a subsequent assignment. See e.g. *Mimica*, 250 Ill. App. 3d at 432, 620 N.E.2d at 1335 (stating that "where valuable economic rights were exchanged for an illusory promise we find the amount of consideration so grossly inadequate as to amount to none at all").

Catlin has pled, as a legal conclusion, without any factual support, that it has taken an assignment from Imperial. [DN 59, ¶59]. The Seventh Circuit has instructed that for purposes of a motion to dismiss a court must "accept the well-pled facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

So Catlin's asserted legal conclusion regarding the supposed assignment does not adequately plead a Section 155 claim. The Section 155 claim should be dismissed on that basis alone.

Zurich's motion also pointed out that, even if an assignment was made, Imperial is not entitled to recover damages from Zurich, because Catlin, not Imperial, paid the defense costs that are in dispute and Imperial cannot recover defense costs that Catlin paid. Catlin does not challenge the cases Zurich cited to support this proposition. See *Illinois Tool Works, Inc. v. The Home Indemnity Co.*, 24 F. Supp.2d 851, 857 (N.D. Ill. 1998), *Santa's Best Craft LLC v. St. Paul Fire and Marine Ins. Co.*, 353 F.Supp.2d 966, 976 (N.D. Ill. 2005) (both holding that an insured is not entitled to recover defense costs from an insurance carrier if the defense costs have already been paid by another carrier).[1] Since an assignee can only assert the rights that are held by the assignor (a proposition that Catlin likewise does not challenge), it is incontestable that Catlin, in its alleged capacity as Imperial's assignee, likewise cannot recover the disputed defense costs from Zurich. See *Illinois Tool Works*, 24 F. Supp.2d at 857; *Kelley/Lehr & Associates v. O'Brien*, 194 Ill.App.3d 380, 386, 551 N.E.2d 419, 423 (2nd Dist. 1990).

Catlin huffs and puffs about this argument being "patently absurd" such that it does not "merit a response." [DN 74, p. 5]. And true to its word, Catlin does not offer any substantive

---

[1] In fact, the cases Zurich cited from this District are consistent with a wealth of authority on this topic. See *Concord Hospital v. New Hampshire Medical Malpractice Joint Underwriters Assoc.*, 142 N.H. 59, 694 A.2d 996 (N.H. 1997) (where Supreme Court of New Hampshire instructed an insured cannot recover from insurance carrier amounts that were paid by another insurance carrier); *Sloan Construction Co. v. Central National Ins. Co. of Omaha*, 269 S.C. 183, 236 S.E.2d 818 (S.C. 1977) (where Supreme Court of South Carolina held that an insured cannot recover from insurance carrier defense costs that were paid by another insurance carrier); *McDonald v. National Grange Mutual Insurance Co.*, 41 A.D.2d 862, 342 N.Y.S.2d 478 (N.Y. App. 3rd Dept. 1973) (where New York appellate court held that an insured suffers no damage from one carrier's coverage denial if another carrier fully defends and indemnifies the insured in the underlying lawsuit); *American Surety Co. v. State Farm Mutual Automobile Ins. Co.*, 274 Minn. 81, 84, 142 N.W.2d 304, 306 (Minn. 1966) (where Supreme Court of Minnesota instructed that insured suffers no damage from one carrier's coverage denial if another carrier fully defends and indemnifies the insured in the underlying lawsuit).

response to the point that since Imperial cannot recover damages from Zurich under Section 155, Catlin itself cannot recover damages from Zurich under Section 155. By failing to make any argument on this point, Catlin has forfeited the right to do so.

Catlin appears however to cryptically suggest that even if it cannot recover damages under Section 155(1)(a), it can still do so under Section 155(1)(b). At least that is the best Zurich's counsel can make of the following vague remark from Catlin: "Suffice it to say that section 155 allows other damages beyond what is contained in subparagraph (1)(a). *See e.g.,* 215 ILCS 5/155(1)(b)." [DN 74, p. 5]. That might be an argument, apparently written in shorthand, contending that Section (1)(a) and (1)(b) provide different avenues to recover damages. Catlin apparently does not understand how Section 155 works. The relevant text of the statute states:

> § 155. Attorney fees.
>
> (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount **not to exceed any one of the following amounts**:
>
> (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
>
> (b) $60,000;
>
> (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

"Not to exceed any one of the following amounts" is the key language here. It means that

8

subparagraphs (1)(a), (1)(b) and (1)(c) each independently set a maximum cap on the claimant's recovery. See *Kaplan v. Standard Insurance Co.*, 2013 WL 5433463, *5-6 (N.D. Ill. September 30, 2013) (holding that "the plain language of Section 155 limits an award of statutory damages for unreasonable delay to the smallest amount prescribed by the three paragraphs")[2]. If a claimant is entitled to recover $2,000 under (1)(a), the claimant's recovery cannot <u>exceed</u> that $2,000, meaning that the claimant cannot separately recover $60,000 under (1)(b), because $60,000 is <u>more</u> than $2,000. Likewise if the claimant is entitled to recover $0 (no damages from the company) under (1)(a), the claimant does not get a $60,000 bonus under (1)(b). That statutory scheme makes sense. Illinois courts do not reward a claimant with a $60,000 bonus for prosecuting a Section 155 claim where it was determined that the claimant was not entitled to recover any damages from the carrier.

Zurich has no doubt that Catlin understands precisely how the recovery caps in Section 155 work, and that Catlin avails itself of the protection provided by the caps in situations where Catlin is sued under Section 155. The suggestion that Catlin could recover damages under Section 155 appears to (unfortunately) provide another example of the "situation driven" approach to the law that was evident in Catlin's arguments regarding the existence of federal jurisdiction. In any event, the fact that Catlin literally cannot recover any damages from Zurich

---

[2] In reaching this holding the Kaplan court noted that the weight of the authorities on this issue adheres to this interpretation. *Id.* (citing *Atteberry v. Esurance Ins. Servs., Inc.,* 473 F.Supp.2d 876 (N.D. Ill. 2007) (holding with respect to the $60,000 amount in Section 155(1)(b) that, "as the statute makes plain, no award in that amount is possible unless the $60,000 ceiling figure is less than 60% of [Plaintiffs'] recovery"); *Rehkemper & Son, Inc. v. Ind. Lumbermens Mut. Ins. Co.,* No. 09–858–GPM, 2010 WL 547167, at *5 (S.D. Ill. Feb. 10, 2010) ("An award under [Section 155] must be limited to the smallest of the three possible amounts.") (citing *Nelles v. State Farm Fire & Cas. Co.,* 318 Ill.App.3d 399, 400, 742 N.E.2d 420, 421 (1st Dist. 2000)); *Great Lakes Dredge & Dock Co.v. Commercial Union Assurance Co.,* No. 94 C 2579, 2000 WL 1898533, at *14 (N.D. Ill. Sept. 18, 2000) ("Section 155 precludes the penalty from exceeding 'any one' of the three options—meaning, quite plainly, that it may not exceed any of the three options.") *rev'd on other grounds sub nom. Great Lakes Dredge & Dock Co. v. City of Chicago,* 260 F.3d 789, 790 (7th Cir.2001).

under Section 155 provides a basis to dismiss that claim with prejudice.

Zurich's motion also set forth a separate argument (at pages 10-12) as to why Catlin failed to plead the necessary elements of a Section 155 claim. In summary, Zurich noted that, at best, Catlin's claim does not even allege that Zurich denied a defense to Imperial (and simply seeks to reallocate defense costs among carriers contained) and further that the pleadings on file in this action (specifically Zurich's Intervenor's Counterclaim established the existence of *bona fide* coverage dispute based on the language of the Zurich policy). In response, Catlin's last paragraph solely references Zurich's argument relating to a "*bona fide* dispute". Catlin claims that paragraph 56 of the Second Amended Complaint must be taken as true and therefore Catlin's claim should survive the motion to dismiss. [DN 74, p. 5]. There is no argument or explanation for why this is the case or why Zurich's arguments on the "*bona fide* dispute" do not support a dismissal of Count III here. Moreover, Catlin's response fails to address Zurich's argument that Catlin has failed to plead a Section 155 claim (starting at page 10 of the motion) and that the allegations in the Second Amended Complaint, even if taken as true, do not support a Section 155 claim. By failing to make any argument with respect to this position, Catlin waives the right to do so. Zurich stands on the arguments made in its motion on this issue.

For these reasons, Count III must be dismissed with prejudice.

ZURICH AMERICAN INSURANCE COMPANY

By: /s/ Kristina M. Beck
One of Its Attorneys

Brian A. O'Gallagher
Kristina M. Beck
CREMER, SPINA, SHAUGHNESSY, JANSEN & SIEGERT, LLC
One North Franklin Street, 10th Floor
Chicago, Illinois 60606
Tel: (312) 726-3800
Fax: (312) 726-3818
32-703/doc#308362